# Exhibit B

# EMPLOYMENT, CONFIDENTIALITY, PROPRIETARY, INFORMATION AND INVENTIONS AGREEMENT

THIS EMPLOYMENT, CONFIDENTIALITY, PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT (this "Agreement") is effective as of this 1/19 day of January, 2011, by and between FUTUREWEI TECHNOLOGIES, INC., a Texas corporation (the "Company"), and Yiren Huang (the "Employee").

## RECITALS:

**WHEREAS,** Employee is being offered a position of employment with Company on the date hereof and Employee has accepted such position. Upon acceptance of position, Employee agrees to provide a true and valid employment permit/certificate to ensure compliance with the legal conditions for employment regulated by all federal and state laws.

**WHEREAS,** Employee acknowledges and the Company agrees that it will provide Employee special training and knowledge in connection with Employee's employment that are not commonly available elsewhere, including, but not limited to, knowledge about the Company's Confidential Information (as defined below).

**WHEREAS,** Employee's access to and knowledge of the Confidential Information and Employee's receipt of the special training and knowledge will present Employee with the opportunity to benefit himself or herself and others wrongly at the expense of the Company and its customers if Employee does not abide by the terms of this Agreement. If Employee were to compete with the Company, it would be highly unlikely that Employee could do so with misappropriating for himself or for any competing employer the Confidential Information.

**THEREFORE,** in consideration of Employee's employment, the foregoing premises and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Employee agrees with the Company as follows:

1. **Recognition of Company's Rights; Nondisclosure.**

At all times during the term off my employment and thereafter, I will hold in strictest confidence and will not disclose, discuss, transmit, use, lecture upon or publish any of the Company's Confidential Information, except as such disclosure, discussion, transmission, use, or publication may be required and authorized in connection with my work for the Company, or unless the President or the Board of

Directors of the Company expressly authorizes such in writing. I hereby assign to the Company any rights I may have or acquire in such Confidential Information and recognize that all Confidential Information shall be the sole property of the Company and its assigns and that the Company and its assigns shall be the sole owner of all patent rights, copyrights, trade secret rights, and all other rights throughout the world (collectively, "Proprietary Rights") in connection therewith.

The term "Confidential Information" shall mean trade secrets, confidential knowledge, data or any other proprietary information of the Company and any of its subsidiaries or affiliated companies, if any. By way of illustration but not limitation, "Confidential Information" includes (a) inventions, trade secrets, ideas, processes, formulas, data, lists, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques relating to the business or proposed business of the Company and that were learned or discovered by me during the term of my employment with the Company, (hereinafter, included Confidential Information is collectively referred to as "Inventions"); (b) information regarding plans for research, development, new products and services, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers, customer lists and customers that were learned or discovered by me during the term of my employment with the Company; and (c) information regarding the identity, contact information, skills and compensation of other employees of the Company.

**2.     Third Party Information.**

I understand, in addition, that the Company may from time to time receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. At all times during the term of my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose, discuss, transmit, use, lecture upon, or publish any Third Party Information, except as such disclosure, discussion, transmission, use, or publication may be required and authorized with my work for the Company, or unless the President or the Board of Directors of the Company expressly authorizes such in writing.

**3.     Assignment of Inventions.**

**(a)     Definition.** The term "Subject Ideas or Inventions" includes any and all ideas, processes, trademarks, service marks, inventions, designs, technologies, computer hardware or software, original works of authorship, formulas, discoveries, patents, copyrights, copyrightable works, products, marketing, and business ideas, and all improvements, know-how, date, rights, and claims related to the foregoing that, whether or not patentable, are conceived, developed or created which: (1) relate to the Company's current or contemplated business or activities; (2) relate to the Company's actual or demonstrably anticipated research or developments; (3) result from any work performed by me for the Company; (4) involve the use of the Company's equipment, supplies, facilities or trade secrets; (5) result from or are suggested by any work done by the

Company or at the Company's request, or any projects specifically assigned to me; or (6) result from my access to any of the Company's memoranda, notes, records, drawings, sketches, models, maps, customer lists, research results, data, formulae, specifications, inventions, processes, equipment or other materials (collectively, " Company Materials").

      **(b)**    <u>**Company Ownership**</u>. All right, title, and interest in and to all Subject Ideas and Inventions, including but not limited to all registrable and patent rights which may subsist therein, shall be held and owned solely by the Company, and where applicable, all Subject Ideas and Inventions shall be considered works made for hire. I shall mark all Subject Ideas and Inventions with the Company's copyright or other proprietary notice as directed by the Company and shall take all actions deemed necessary by the Company to project the Company's rights therein. In the event that the Subject Ideas and Inventions shall be deemed no to constitute works made for hire, or in the event that I should otherwise, by operation of law, be deemed to retain any rights (whether moral rights or otherwise) to any Subject Ideas and Inventions, I agree to assign to the Company, without further consideration, my entire right, title and interest in and to each and every such Subject Idea and Invention.

      **(c)**    <u>**Maintenance of Records**</u>. I agree to keep and maintain adequate and current written records of all Subject Ideas and Inventions and their development made by me (solely or jointly with others) during the term of my employment with the Company. These records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. These records will be available to and remain the sole property of the Company.

      **(d)**    <u>**Determination of Subject Ideas and Inventions**</u>. I further agree that all information and records pertaining to any idea, process, service mark, invention, technology, computer hardware or software, original work of authorship, design formula, discovery, patent, copyright, product, and all improvements, know-how, rights, and claims related to the foregoing ("Intellectual Property"), that I do not believe to be a Subject Idea or Invention, but that is conceived, developed, or reduced to practice by the Company (alone by me or with others) during the period of my employment and for one (1) year after the termination of such employment, shall be disclosed promptly by me to the Company (such disclosure to be received in confidence). The Company shall examine such information to determine if in fact the Intellectual Property is a Subject Idea or Invention subject to this Agreement.

      **(e)**    <u>**Access**</u>. Because of the difficulty of establishing when any Subject Ideas or Inventions are first conceived by me, or whether they result from my access to Confidential Information or Company Materials, I agree that any Subject Idea and Invention shall, among other circumstances, be deemed to have resulted from my access to Company Materials if: (1) it grew out of or result from my work with the Company or is related to the business of the Company, and (2) it is made, used, sold, exploited or reduced to practice, or an application for patent, trademark, copyright or other proprietary protection is filed thereon, by me or with my significant aid, within one (1) year after my termination from employment.

**(f)** **Assistance.** I further agree to assist the Company in every proper way (but at the Company's expense) to obtain and from time to time enforce patents, copyrights or other rights or registrations on said Subject Ideas and Inventions in any and all countries, and to that end will execute all documents necessary.

(1) to apply for, obtain and vest in the name of the Company alone (unless the Company otherwise directs) letters patent, copyrights or other analogous protection in any country throughout the world and when so obtained or vested to renew and restore the same;

(2) to defend any opposition proceedings in respect of such applications and any opposition proceedings or petitions or applications for revocation of such letters patent, copyright or other analogous protection; and

(3) to cooperate with the Company (but at the Company's expense) in any enforcement or infringement proceedings on such letters patent, copyright or other analogous protection.

**(g)** **Authorization to Company.** In the event the Company is unable, after reasonable effort, to secure my signature on any patent, copyright or other analogous protection relating to a Subject Idea and Invention, whether because of my physical or mental incapacity or for any other reason whatsoever, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf and stead to execute and file any such application, applications or other documents and to do all other lawfully permitted acts to further the prosecution, issuance, and enforcement of letters patent, copyrights or other analogous rights or protections thereon with the same legal force and effect as if executed by me. My obligation to assist the Company in obtaining and enforcing patents and copyrights for Subject Ideas and Inventions in any and all countries shall continue beyond the termination of my relationship with the Company, but the Company shall compensate me at a reasonable rate after such termination for time actually spent by me at the Company's request on such assistance.

**(h)** **No use of Name.** I shall not at any time use the Company's name or any of the Company trademark(s) or trade name(s) in any advertising or publicity without the prior written consent of the Company.

**4.** **Obligation to Keep Company Informed.**

During the first one (1) year after termination of my employment with the Company, I will provide the Company with a complete copy of each patent application filed by me or that names me as an inventor or co-inventor.

**5.** **Prior Inventions.**

Inventions, if any, patented or unpatented, that I made prior to the

commencement of my employment with the Company are excluded from the scope of the Agreement. To preclude any possible uncertainty, I have set forth on Exhibit A attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed, or reduced to practice prior to commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement. If disclosure of any such Invention on Exhibit A would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Inventions in Exhibit A but am to inform the Company that all Inventions have not been listed for that reason.

6. **Other Activities; Non-Competition; Non-Solicitation.**

**(a)** In consideration of the premises hereof and in further consideration of the Company's promise to disclose to me confidential and Confidential Information and trade secrets of the Company and the Company's promise to provide me with immediate specialized training, and the experience I will gain throughout my employment with the Company, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, I hereby agree that during the term of my employment, I will not, directly or indirectly, (a) compete in the state of Texas, or any other state of the United States where the Company is then conducting business or (b) participate in the ownership, management, operation, financing, or control of, or be employed by or consult for or otherwise render services to, any person, corporation, firm, or other entity that competes in the state of Texas, or in any other State of the United States where the Company is then conducting business, in the similar business as conducted and as proposed to be conducted by the Company. Notwithstanding the foregoing, I am permitted to own up to 5% of any class of securities of any corporation that is traded on a national securities exchange or through NASDAQ.

**(b)** During the term of my employment and for a period of one (1) year after my employment with Company, I will not directly or indirectly, individually or on behalf of any other person, firm, partnership, corporation, or business entity of any type, solicit, assist or in any way encourage any current employee or consultant of the Company or any subsidiary of the Company to terminate his or her employment relationship or consulting relationship with the Company or subsidiary.

7. **No Improper Use of Materials.**

I understand that I shall not use the proprietary of confidential information or trade secrets of any former employer or any other person or entity in connection with my employment with the Company. During my employment by the Company, I will not improperly use or disclose any proprietary or confidential information or trade secrets, if any, of any former employer or any other person or entity to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any propriety and confidential information, Intellectual Property, trade secrets, unpublished documents or any property belonging to any former employer or any person or entity to whom I have

an obligation of confidentiality unless consented to in writing by that former employer, person, or entity.

**8.     No Conflicting Obligation.**

I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement between me and any other employer, person or entity. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith. I hereby warrant that no employment agreement or other obligations or pending disputes exist with my former or other employers.

**9.     Return of Company Documents.**

When I leave the employ of the Company, I will deliver to the Company all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information, or Confidential Information of the Company. I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

**10.    Legal and Equitable Remedies.**

Because my services are personal and unique and because I will have access to and become acquainted with the Confidential Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

**11.    Notices.**

Any notice required or permitted hereunder shall be given to the appropriate party at the party's last known address. Such notice shall be deemed given upon personal delivery to the last known address or if sent by certified or registered mail, three days after the date of mailing.

**12.    General Provisions.**

   **(a)    Governing Law.** This Agreement will be governed by and construed according to the laws of the State of Texas without regard to conflicts of law principles.

   **(b)    Exclusive Forum.** I hereby irrevocably agree that the exclusive forum for any suit, action, or other proceeding arising out of or in any way related to this

Agreement shall be in the state or federal courts in Texas, and I agree to the exclusive personal jurisdiction and venue of any court on Collin County Texas.

**(c)** **Entire Agreement.** This Agreement sets forth the entire agreement and understanding between the Company and myself relating to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. As used in this Agreement, the period of my employment includes any time during which I may be retained by the Company as a consultant.

**(d)** **Severability.**

(i) I acknowledge and agree that each agreement and covenant set forth herein constitutes a separate agreement independently supported by good and adequate consideration and that each such agreement shall be severable from the other provisions of this Agreement and shall survive this Agreement.

(ii) I understand and agree that Section 6 of this Agreement is to be enforced to the fullest extent permitted by law. Accordingly, if a court of competent jurisdiction determines that the scope and/or operation of Section 6 is too broad to be enforced as written, the Company and I intend that the court should reform such provision to such narrower scope and/or operation as it determines to be enforceable, provided, however, that such reformation applies only with respect to the operation of such provision in the particular jurisdiction with respect to which such determination was made. If, however, Section 6 is held to be illegal, invalid, or unenforceable under present or future law, and not subject to reformation, then (1) such provision shall be fully severable, (2) this Agreement shall be construed and enforced as if such provision was never a part of this Agreement, and (3) the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance.

**(e)** **Successors and Assigns.** This Agreement will be binding upon my heirs, executors, administrators, and other legal representatives and will be for the benefit of the Company, its successors and assigns.

**(f)** **Survival.** Applicable provisions of this Agreement shall survive the termination of my employment for any reason and the assignment of this Agreement by the Company to any successor in interest or other assignee.

**(g)** **Employment.** I agree and understand that my employment with the Company is at will, which means that either I or the Company may terminate the employment relationship at any time with or without prior notice and with or without cause. I further agree and understand that nothing in this Agreement shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in

any way with my right or the Company's right to terminate my employment at any time, with or without cause. When I choose to terminate this employment relationship, or if I am terminated for cause, in both instances, I will be obligated to repay any signing bonus according to the terms included in the offer letter that I have signed. I also agree to return all company property in my possession, including cash advances, computers, or other equipment belonging to the company. If I fail to return any signing bonus or company property on or before my termination date, I agree to have the total value of all unreturned property deducted from my final paycheck.

**(h)** **Waiver.** No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

**(i)** **Recovery of Attorney's Fees.** In the event of any litigation arising from or relating to this Agreement, the prevailing party in such litigation proceedings shall be entitled to recover, from the non-prevailing party, the prevailing party's cost and reasonable attorney's fees, in addition to all other legal or equitable remedies to which it may otherwise be entitled.

**(j)** **Headings.** The headings to each section or paragraph of this Agreement are provided for convenience of reference only and shall have no legal effect in the interpretation of the terms hereof.

**EMPLOYER:**

BY: _____

Name: _____

Title: _____

**EMPLOYEE:**

_____
(Signature)

YIREN HUANG
_____
Print Name

Huawei Employment, Confidentiality, Proprietary Information and Inventions Agreement

## EXHIBIT A

Ladies and Gentlemen:

The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by _Cisco and by myself_ (previous employer) that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my employment by the Company that I desire to remove from the operation of the Company's Employment, Confidentiality, Proprietary Information and Inventions Agreement.

_____ I have no inventions or improvements to disclose.

__X__ I have inventions or improvements which I have disclosed on the attached Invention Disclosure form(s).

__X__ Due to certain confidentiality obligations, I cannot disclose certain inventions that otherwise would be listed.

Signature: _[signature]_

Date: _1/19/2011_, 201_1_

## INVENTION DISCLOSURE

Invention Disclosure # __1__

Inventors:   1. __Yiren Huang__

2. _____

3. _____

Title of Invention: __Patent on "Method and Appratus of designing SSD Controller for Flash or other similar Non-volatile memory"__

Problem solved by invention: __Solved various issues with Flash based SSD controller.__

Invention Description: __It has been disclosed to CR&D before I joined.__

*Add additional signed, dated sheets and drawings if necessary.*

Has this invention been disclosed outside of the Company? Yes ____ No __X__
__There are other 5 patents filed at Cisco when I worked__

Inventor Signature: _____   Date: __1/19/2011__

Huawei Employment, Confidentiality, Proprietary Information and Inventions Agreement

**Assignment of Patent Rights**

For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned, _____ *("Assignor")*, hereby:

sells, assigns, transfers and conveys unto ***Futurewei Technologies, Inc.*** *("Assignee")*, and its successors, all rights, title and interest that exist today and may exist in the future in and to all of the following:

(A) all (a) provisional patent applications, patent applications and patents listed below; (b) patents or patent applications (i) to which any of the foregoing directly or indirectly claims priority, and/or (ii) for which any of the foregoing or the following directly or indirectly forms a full or partial basis for priority; (c) reissues, reexaminations, extensions, continuations, substitutions, continuing prosecution applications, requests for continuing examinations and divisions of any item in the foregoing categories (a) and (b); and (d) foreign patents, patent applications and counterparts, including international and regional applications, relating to any item in the foregoing categories (a) through (c), including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances (the "Transferred Patents");

(B) Inventions, invention disclosures and discoveries described in any of the Transferred Patents;

(C) Rights to apply in any or all countries of the world for any of the Transferred Patents and the inventions, invention disclosures and discoveries therein;

(D) Causes of action (whether currently pending, filed or otherwise) and other enforcement rights under, or on account of, any of the Transferred Patents, including, without limitation, all causes of action and other enforcement rights for (i) damages, (ii) injunctive relief, and (iii) any other remedies of any kind for past, current and future infringement; and

(E) Rights to collect royalties or other payments under or on account of any of the Transferred Patents and/or any of the foregoing.

| Patent Application No. | Publication No. | Patent No. | Issue Date |
|---|---|---|---|
| US 61/839,389 | N/A | | |
| US 14/191,335 | US 2015/0006663 | | |
| US 14/843,884 | US 2015/0378605 | | |
| US 14/954,691 | US 2016/0085718 | | |
| US 14/843,891 | US 2015/0378606 | | |
| US 14/843,892 | US 2015/0378640 | | |
| PCT/US2014/043279 | WO 2014/209764; CN201480042920.8; TW201524170 | | |

AND Assignor hereby agrees to execute without further consideration any further documents and instruments which may be lawful and proper in the prosecution of the Transferred Patents, and which may be desirable or necessary to secure to Assignee its rights, title and interest in and to said Patents;

AND Assignor hereby authorizes the respective patent office or governmental agency in each jurisdiction to issue any and all patents or other governmental grants or issuances that may be granted upon any of the Transferred Patents in the name of Assignee, as the assignee to the entire interest therein.

The terms and conditions of this Assignment of Patent Rights shall inure to the benefit of Assignee, its successors, assigns and other legal representatives and will be binding upon Assignor, its successors, assigns and other legal representatives.

IN WITNESS WHEREOF this Assignment of Patent Rights is executed on the date of: _____.

| ASSIGNOR | ASSIGNEE |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ )

On _____ before me, _____,
(insert name and title of the officer)

personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)